IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION


UNITED STATES OF AMERICA,        )
                                 )
       Plaintiff,                )
                                 )
   vs.                           ) Criminal Docket
                                 )
GLIB OLEKSANDR IVANOV-TOLPINTSEV, ) No. 8:20-cr-309-SDM-AEP
                                 )
      Defendant.                )
_____ )


### Transcript of Sentencing

Heard in Courtroom 15A
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Thursday - May 12, 2022
9:02 a.m. - 10:15 a.m.


BEFORE THE HONORABLE STEVEN D. MERRYDAY

UNITED STATES DISTRICT JUDGE


REBECCA M. SABO, RMR, CRR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Room 1221
Tampa, Florida 33602
Rebecca_Sabo@flmd.uscourts.gov
(406) 855-6410

Proceedings recorded by machine shorthand
Transcript produced by computer-assisted transcription

APPEARANCES


PRESENT ON BEHALF OF THE PLAINTIFF,
THE UNITED STATES OF AMERICA:

    **Carlton Curtiss Gammons**
    Assistant U.S. Attorney
    OFFICE OF THE U.S. ATTORNEY
    400 North Tampa Street, Suite 3200
    Tampa, Florida 33602-4798


PRESENT ON BEHALF OF THE DEFENDANT,
GLIB OLEKSANDR IVANOV-TOLPINTSEV:

    **Adrian Burden**
    Assistant Federal Public Defender
    FEDERAL PUBLIC DEFENDER'S OFFICE
    400 North Tampa Street, Suite 2700
    Tampa, Florida 33602-4726

PROCEEDINGS

    (Open court.)

08:48:13AM     (Defendant present.)

09:02:42AM         THE COURT:  Good morning.

09:02:44AM         Perhaps counsel and the defendant and the interpreter

09:02:47AM will step forward to the clerk's table.

09:02:52AM     (Complies.)

09:03:09AM         THE COURT:  Well, good morning.

09:03:29AM         We are together in Case 20-criminal-309, United

09:03:35AM States of America versus Glib Oleksandr Ivanov-Tolpintsev.

09:03:38AM         I note the presence of an interpreter, and I would

09:03:44AM ask the deputy clerk to administer to her the oath of an

09:03:50AM interpreter.

09:03:51AM     (Oath administered to interpreter, Yulia Shevchenko.)

09:04:04AM         THE CLERK:  State your name, please.

09:04:07AM         THE INTERPRETER:  Yulia Shevchenko.

09:04:11AM         THE COURT:  Thank you.

09:04:12AM         THE INTERPRETER:  You're welcome.

09:04:13AM         THE COURT:  Good morning, and thank you for being

09:04:15AM with us.

09:04:16AM         THE INTERPRETER:  Good morning.  You're welcome.

09:04:18AM         THE COURT:  Who speaks for the United States?

09:04:19AM         MR. GAMMONS:  Good morning, Your Honor.

09:04:20AM         Carlton Gammons for the United States.

09:04:22AM         THE COURT:  Good morning, Mr. Gammons.

09:04:23AM 1    And who speaks for the defense?

09:04:26AM 2    MS. BURDEN:  Good morning, Your Honor.

09:04:27AM 3    Adrian Burden for Mr. Ivanov-Tolpintsev.

09:04:33AM 4    THE COURT:  Good morning, Ms. Burden.

09:04:33AM 5    And you are Glib Ivanov-Tolpintsev?

09:04:37AM 6    THE DEFENDANT:  Yes.

09:04:38AM 7    THE COURT:  Good morning, sir.

09:04:43AM 8    Well, Mr. Ivanov-Tolpintsev, on February 22nd of this

09:04:50AM 9 year, you pleaded guilty to Count 1 of an indictment.

09:05:05AM 10    THE DEFENDANT:  Yes.

09:05:06AM 11    THE COURT:  The indictment charges you with

09:05:07AM 12 conspiracy, in particular a conspiracy to traffic in

09:05:18AM 13 unauthorized access devices --

09:05:30AM 14    THE DEFENDANT:  Yes.

09:05:31AM 15    THE COURT:  -- and computer passwords, in violation

09:05:35AM 16 of parts of Section 371, Section 1029, and Section 1030 of

09:05:53AM 17 Title 18 of the United States Code.

09:05:58AM 18    The -- let's stop there just a moment, and let's go

09:06:03AM 19 off the record.

09:06:05AM 20   (Off-the-record discussion.)

09:06:34AM 21    THE COURT:  I earlier entered an order that accepts

09:06:43AM 22 your plea of guilty and that adjudges you guilty of the

09:06:49AM 23 conspiracy charged in Count 1.  So as of the entry of that

09:06:58AM 24 order, your guilt was determined, and it remains to determine

09:07:03AM 25 your sentence.  As I know your counsel has explained, I will

09:07:12AM 1   determine your sentence by first determining an advisory

09:07:19AM 2   sentence under the United States Sentencing Guidelines and by

09:07:29AM 3   next inviting both the United States and the defense to direct

09:07:32AM 4   my attention to any matter, including those at 18 U.S.C.

09:07:46AM 5   3553(a).

09:07:47AM 6        I'll begin by asking Mr. Gammons if he's had an

09:07:52AM 7   opportunity, on behalf of the United States, to review and

09:07:57AM 8   evaluate the presentence report and, if so, whether the United

09:08:04AM 9   States objects either to the factual accuracy of the report or

09:08:10AM 10  to the application of the sentencing guidelines that is

09:08:16AM 11  recommended by the United States Probation Office.

09:08:19AM 12       MR. GAMMONS:  I have reviewed the report, Your Honor,

09:08:24AM 13  and there are no objections from the United States.

09:08:28AM 14       THE COURT:  All right.  Ms. Burden, have you and

09:08:31AM 15  Mr. Ivanov-Tolpintsev had an opportunity together to review and

09:08:37AM 16  evaluate the presentence report?

09:08:40AM 17       MS. BURDEN:  Yes, we have, Your Honor.

09:08:42AM 18       THE COURT:  Mr. Ivanov-Tolpintsev, have you reviewed

09:08:45AM 19  the presentence report and discussed it with your counsel?

09:08:54AM 20       THE DEFENDANT:  Yes.

09:08:55AM 21       THE COURT:  First, Ms. Burden, is there any objection

09:08:59AM 22  to the factual content of the presentence report?

09:09:02AM 23       MS. BURDEN:  Yes.  Just one, Your Honor, that I had

09:09:05AM 24  overlooked on page 13, paragraph 66.  The date that's listed on

09:09:14AM 25  that first line is incorrect, Your Honor.  As the Court sees on

09:09:18AM   1   page 1, Mr. Ivanov-Tolpintsev has been incarcerated since

09:09:24AM   2   October the 3rd of 2020.

09:09:29AM   3          THE COURT:  10/3/2020.

09:09:36AM   4          MS. BURDEN:  Yes, Your Honor.

09:09:37AM   5          THE COURT:  Mr. Gammons.

09:09:37AM   6          MR. GAMMONS:  That's accurate, Your Honor.

09:09:39AM   7          THE COURT:  All right.  Then, the presentence report

09:09:41AM   8   is so amended.  And if there is no other objection, the Court

09:09:49AM   9   adopts the factual content of the presentence report.

09:09:53AM  10          I know you have at least one objection to the

09:09:58AM  11   guideline calculation, Ms. Burden, so I'll recognize you to

09:10:02AM  12   advance that.

09:10:02AM  13          MS. BURDEN:  Thank you, Your Honor.

09:10:03AM  14          And I won't rehash the argument that I made for the

09:10:06AM  15   Court in the objections that are listed in the presentence

09:10:09AM  16   report and the further explanation in the memorandum, except to

09:10:13AM  17   say that this Court should follow the party's directive as

09:10:21AM  18   to -- and in a post-*Kisor* world, look at the commentary, to not

09:10:26AM  19   expand the guidelines here, which the arbitrary $500 per access

09:10:31AM  20   device does in this instance.  It creates a loss amount for

09:10:35AM  21   Mr. Ivanov-Tolpintsev of an additional 16 levels, because that

09:10:39AM  22   $500 per access device amounts to $3,352,000.

09:10:51AM  23          Your Honor, there are accurate ways to determine a

09:10:54AM  24   loss amount, and the government is required to do that for this

09:10:58AM  25   Court by a preponderance of the evidence.  In expanding the

09:11:05AM  1   text of the guideline, that increases Mr. Ivanov's guidelines

09:11:11AM  2   an additional 10 levels beyond the $82,000 amount that is

09:11:17AM  3   articulated as an amount that the government has been able to

09:11:23AM  4   determine that Mr. Ivanov received.

09:11:27AM  5          And so I would ask the Court, in line with *Kisor* and

09:11:32AM  6   then the *Riccardi* decision, to reject that interpretation of

09:11:41AM  7   what the guideline means.  If the commission wanted that to be

09:11:48AM  8   what this guideline means, it would have been placed in the

09:11:51AM  9   guideline and gone through to notice and comment requirements

09:11:55AM 10   as the actual text of the guidelines does.

09:12:08AM 11          THE COURT:  And to whom -- to what victim is the

09:12:12AM 12   $82,000 a loss?

09:12:14AM 13          MS. BURDEN:  The only victims that have been

09:12:16AM 14   identified in this plea agreement are victims A and B.  Now, I

09:12:24AM 15   know one of the things that's going to be addressed here is if

09:12:27AM 16   there's any additional restitution, and I know the Court

09:12:30AM 17   opined, in its order denying the government's motion to

09:12:36AM 18   continue, that this Court may reserve, for a period of 90 days,

09:12:42AM 19   an opportunity for the government to produce any additional

09:12:45AM 20   victims that may be due anything -- due any restitution here.

09:12:49AM 21          THE COURT:  Well, the statute says that that's what

09:12:54AM 22   you do within disputed restitution.

09:12:57AM 23          MS. BURDEN:  I agree, Your Honor.

09:12:58AM 24          THE COURT:  Okay.  Yes.

09:12:59AM 25          So you're suggesting that a proper loss amount is

09:13:10AM  1  $82,000.

09:13:11AM  2      MS. BURDEN:  Yes, Your Honor.

09:13:12AM  3      THE COURT:  So my question to you was, to whom or by

09:13:17AM  4  what logic is $82,000, which was the amount of gain that he

09:13:22AM  5  had, a loss amount?  To whom is it a loss?

09:13:33AM  6      MS. BURDEN:  Presumably the victims that this

09:13:35AM  7  Court -- that the government can produce to the Court.  But I

09:13:38AM  8  would ask --

09:13:38AM  9      THE COURT:  Well, who paid the money?

09:13:40AM  10      MS. BURDEN:  Individuals that bought -- I understand,

09:13:43AM  11  Your Honor, that buyers to this marketplace bought that, but

09:13:46AM  12  that's no different than throwing out some arbitrary $500

09:13:52AM  13  amount per access device, right, because who is that $3 million

09:13:56AM  14  due to?

09:13:57AM  15      THE COURT:  That would be a typical minimal loss to

09:14:03AM  16  the persons whose identity was exploited for the very purpose

09:14:11AM  17  of acquiring value through the misuse of the number.

09:14:17AM  18      MS. BURDEN:  And that would require this Court to

09:14:19AM  19  assume that 6,704 individuals had some kind of identity loss.

09:14:26AM  20  That's not the case here.

09:14:27AM  21      THE COURT:  No, it doesn't.  The guidelines talk

09:14:30AM  22  about intended loss.  And that decision has been made.

09:14:33AM  23      What we're trying to -- what we're trying to

09:14:34AM  24  calculate here is a reasonable intended loss for the purpose of

09:14:40AM  25  the guidelines.  Now, for the purpose of restitution, that may

09:14:43AM   1   be a different issue, but for the purpose of loss, the

09:14:46AM   2   guidelines clearly and finally in 2015 adopted the intended --

09:14:53AM   3   the "greater of the actual or intended loss" measure.

09:14:57AM   4           So to the extent that your argument is trying to

09:15:01AM   5   determine -- or the United States is required to determine the

09:15:04AM   6   actual loss, I don't know how you can maintain that.

09:15:08AM   7           MS. BURDEN:  No, Your Honor, and that is not my

09:15:10AM   8   argument.  I understand that the loss amount is the greater of

09:15:16AM   9   the actual or the intended loss.  How we arrive at the intended

09:15:19AM  10   loss, I think, is arbitrary, though, is my argument.

09:15:22AM  11           The $500 -- or the $500 per access device is an

09:15:27AM  12   arbitrary amount, Your Honor.

09:15:28AM  13           THE COURT:  Well, to the extent that the loss that

09:15:33AM  14   was intended can never be precisely calculated, it is always

09:15:45AM  15   finally indeterminate, but the guidelines have always accepted

09:15:49AM  16   the notion that the Court can make what you might call a

09:15:55AM  17   "learned" or "informed approximation" based on the intent and

09:16:01AM  18   purpose of the scheme.  There are a lot of ways you could

09:16:08AM  19   phrase this.

09:16:13AM  20           You could say, well, if someone is going to seize

09:16:18AM  21   someone's, for instance, credit card number for misuse, given

09:16:25AM  22   the realities of day-to-day life in the credit card business,

09:16:28AM  23   they probably wouldn't, under any circumstances, want less than

09:16:34AM  24   $500 for it.  They wouldn't use it for less than $500.

09:16:42AM  25           Frankly, the ones that I've seen -- I've never seen a

09:16:45AM 1   scheme to steal, for instance, credit cards, that was under a

09:16:49AM 2   couple of thousand, or at least a thousand or 1200, where they

09:16:53AM 3   would take ready cash, or whatever the cash limit was.  Some of

09:16:57AM 4   them vary on that.

09:16:59AM 5         But to say that the sentencing commission cannot

09:17:05AM 6   reasonably assign a nominal amount which is demonstrably, based

09:17:12AM 7   on the numbers that are available, on the low side of what

09:17:15AM 8   people would tend to do, how much loss would be intended to the

09:17:20AM 9   holder of a credit card, for example, it is the wrongful charge

09:17:26AM 10   that was made against their credit.  To say that's $500, to the

09:17:33AM 11   extent that's an unrealistic assignation, it's probably low for

09:17:39AM 12   an intended loss, to try to measure rationally that which

09:17:46AM 13   cannot be measured exactly.  And certainly if we're required to

09:17:58AM 14   deal with the concept of intended loss with precision, we have

09:18:05AM 15   immediate collapse, because we can't do it.  In fact, the

09:18:08AM 16   notion of intended loss is always an act of estimation.

09:18:25AM 17         So if I were going to estimate it, I'd estimate it

09:18:28AM 18   higher, because I don't think anybody would trouble with a

09:18:32AM 19   credit card account for under a thousand dollars.  And I don't

09:18:36AM 20   know of a credit card that doesn't have a thousand-dollar cash

09:18:36AM 21   withdrawal amount on it.  Maybe there are, but maybe -- but

09:18:39AM 22   others know better than I, and I'm not in the business of

09:18:40AM 23   trying to calculate it, but it seems to be very conservative.

09:18:49AM 24         MS. BURDEN:  There's a couple of -- there's a couple

09:18:50AM 25   of issues in giving that as a conservative amount, Your

09:18:51AM  1  Honor -- quite a few.  One, every access device is not a credit

09:18:55AM  2  card, right, because some of them --

09:18:55AM  3          THE COURT:  I said "for example."

09:18:56AM  4          MS. BURDEN:  And I know --

09:18:57AM  5          THE COURT:  And you can pick some other one and maybe

09:19:01AM  6  they would be different.  What was the target here?

09:19:03AM  7          MS. BURDEN:  There were a wide range of things.  Some

09:19:06AM  8  of the servers were CPA firms, if you will.  Some of the

09:19:14AM  9  servers --

09:19:14AM  10          THE COURT:  Law firms?

09:19:15AM  11          MS. BURDEN:  Say it again.

09:19:17AM  12          THE COURT:  Law firms?

09:19:17AM  13          MS. BURDEN:  Yes, law firms.  And I think there was

09:19:20AM  14  some information that was included on there that were credit

09:19:23AM  15  card numbers.

09:19:23AM  16          But also, and just going back to that example, we

09:19:27AM  17  presume that there's $500 available on an individual's credit

09:19:30AM  18  card, we presume that an individual doesn't have a $300 limit.

09:19:34AM  19  There are a wide range of things that are presumed in arriving

09:19:39AM  20  at that $500-per-access-device amount, which, again, is why

09:19:43AM  21  it's arbitrary.  I understand the Court's position that --

09:19:44AM  22          THE COURT:  Now, when you say it's arbitrary, I can't

09:19:46AM  23  agree with that.  It's not precise.  But if I say that the

09:19:52AM  24  average human being -- if I say that a thousand soldiers were

09:19:58AM  25  killed in a battle, and what was their total height?  Well, if

09:20:03AM 1   I said it was five-ten and a quarter on average, well, some of
09:20:08AM 2   them are going to be six-three and some of them are going to be
09:20:12AM 3   five-six.  But we know anthropologically that they're -- I
09:20:17AM 4   don't exactly know what the number is, but let's say it's
09:20:18AM 5   five-ten for a modern person and -- a male of 20-something
09:20:23AM 6   years old, because I've learned it gets a little bit lower as
09:20:26AM 7   you get older.  70-year-olds, it would be less.  I don't think
09:20:31AM 8   that's arbitrary.  It's approximate, but it's an informed and
09:20:35AM 9   learned approximation of what would happen.  That's how they
09:20:38AM 10  calculate the width of seats in the airlines; they know about
09:20:43AM 11  how wide the average person is, adult.
09:20:43AM 12         MS. BURDEN:  And as the Court --
09:20:43AM 13         THE COURT:  As you know, they miss a good bit of the
09:20:48AM 14  time, because we have very thin people and we -- the guy next
09:20:50AM 15  to me is always very much larger.  But it's not a bad -- if
09:20:56AM 16  you -- the bigger the plane, the nearer their average width
09:21:03AM 17  will approximate sitting comfortably in that seat.
09:21:09AM 18         Anyway, I agree there are some difficulties here, but
09:21:19AM 19  there's certainly a -- anyway, Mr. Gammons, what says the
09:21:25AM 20  United States on this issue?
09:21:27AM 21         MR. GAMMONS:  Your Honor, as you know, the Eleventh
09:21:31AM 22  Circuit has a history of applying the $500-per-access-device
09:21:35AM 23  directive in a 3(F)(i).  I cited several cases in the United
09:21:42AM 24  States' sentencing memo, but for the record, I'll cite *United
09:21:46AM 25  States v. Maitre*, 898 F.3d 1151, and that's a 2018 case from

09:21:53AM  1    the Eleventh Circuit.

09:21:55AM  2            THE COURT:  Which was before *Kisor*.

09:21:58AM  3            MR. GAMMONS:  Which was pre-*Riccardi*.

09:22:02AM  4            THE COURT:  Riccardi.  Well, more to the point, the

09:22:04AM  5    Supreme Court case.

09:22:04AM  6            MR. GAMMONS:  *Kisor*.

09:22:06AM  7            THE COURT:  *Kisor*.

09:22:06AM  8            MR. GAMMONS:  Yes, Your Honor.

09:22:07AM  9            But even after these cases, it hasn't made it back up

09:22:10AM 10    to Eleventh Circuit yet, but the courts and judges in this

09:22:13AM 11    courthouse have continued to deny the same objection that

09:22:19AM 12    Ms. Burden makes here today.

09:22:21AM 13            Back in July 2021, Judge Jung denied this objection

09:22:26AM 14    in the *Tillman* case.  That's 8:19-cr-311.  And just a couple of

09:22:32AM 15    months ago, in March, Judge Honeywell denied that same

09:22:39AM 16    objection in the *McKinzie* case.  That's 8:21-cr-26.

09:22:46AM 17            I totally agree with the Court's previous comments.

09:22:48AM 18    The government believes that the Application Note 3(F)(i) is a

09:22:53AM 19    permissible and appropriate interpretation of 2B1.1, especially

09:22:59AM 20    in cases like this where the access devices are, in fact, the

09:23:04AM 21    credentials used to log onto the servers, the usernames and the

09:23:10AM 22    passwords for the victim companies.  The -- in the

09:23:13AM 23    circumstances where the loss amount is egregious, is too high,

09:23:19AM 24    the Court is always permitted to vary downward, pursuant to

09:23:32AM 25    3553.

09:23:35AM 1     THE COURT:  All right.  Well, I am going to overrule

09:23:37AM 2  the objection.  Counsel has made the correct objection and

09:23:44AM 3  cited the correct reason for it and explained the objection in

09:23:51AM 4  her memorandum well.  But given the -- what I'm going to call

09:24:10AM 5  "the general principles of intended loss," as has been adopted

09:24:17AM 6  explicitly by the sentencing commission, and given the

09:24:23AM 7  particulars of this case, it seems to me that the $500 is

09:24:36AM 8  comfortably applicable here to provide some rational and

09:24:45AM 9  reasonably reliable estimation.  And I persist in my sort of

09:25:01AM 10 general observation that it's certainly not an excessive amount

09:25:06AM 11 to attribute and likely is generous to the defendant.

09:25:17AM 12     THE INTERPRETER:  Your Honor, could you speak up,

09:25:18AM 13 please.

09:25:19AM 14     THE COURT:  Yes, I'm sorry.

09:25:21AM 15     In his widely used text on federal sentencing

09:25:28AM 16 guidelines, Professor Bowman, who always says things well,

09:25:36AM 17 really explains this issue in a way I find persuasive at

09:25:43AM 18 page 433 and 434 and elsewhere in his particular application of

09:26:16AM 19 the rule to access devices, which he does just a little later

09:26:22AM 20 in the text.  So I commend that in the '21-'22 edition of his,

09:26:34AM 21 as I say, widely used book, which always provides excellent

09:26:38AM 22 background.

09:26:38AM 23     THE INTERPRETER:  Excuse me, Your Honor.  Could you

09:26:38AM 24 speak up, please.

09:26:47AM 25     THE COURT:  Thank you, Ms. Shevchenko.  I call out

09:26:50AM 1  others for mumbling all the time, so thank you for calling me

09:26:54AM 2  out for it.  I deserve that, I think.

09:26:56AM 3          So respectfully, that objection is overruled.

09:27:02AM 4          So if there's no other objection, it seems to me we

09:27:05AM 5  are at offense level of 25 and Criminal History Category I.

09:27:14AM 6          THE INTERPRETER:  Would you please repeat the level.

09:27:20AM 7          THE COURT:  Offense level 25 and Criminal History

09:27:23AM 8  Category I.

09:27:23AM 9          Since there is no one in the courtroom, I take it

09:27:26AM 10  there is no person in the courtroom who wants to be heard as a

09:27:31AM 11  victim in this case.  Is that right, Mr. Fish?

09:27:35AM 12          CSO FISH:  Yes, Judge.

09:27:36AM 13          THE COURT:  Mr. Gammons, is there a motion on behalf

09:27:45AM 14  of this defendant under 5K1 or otherwise?

09:27:51AM 15          MR. GAMMONS:  There is not, Your Honor.

09:27:51AM 16          THE INTERPRETER:  Would you repeat that, Your Honor.

09:27:53AM 17  I couldn't hear.

09:27:55AM 18          THE COURT:  Hmm.  I said, "Mr. Gammons, is there a

09:27:59AM 19  motion on behalf of this defendant under 5K1 or otherwise?"

09:28:05AM 20  And he responded emphatically, "No."

09:28:13AM 21          So, Mr. Gammons, what will the United States suggest

09:28:19AM 22  as the sentence in this action?

09:28:21AM 23          MR. GAMMONS:  We're seeking a guideline sentence of

09:28:23AM 24  60 months in this case, Your Honor.

09:28:25AM 25          THE COURT:  All right.  With that in mind,

09:28:29AM 1  Ms. Burden, I'll recognize you to advance any matter in

09:28:31AM 2  mitigation or any matter under 3553, after which I'll recognize

09:28:36AM 3  the defendant.

09:28:37AM 4          MS. BURDEN:   Thank you, Your Honor.

09:28:38AM 5          Mr. Ivanov-Tolpintsev, as of today, has been in

09:28:44AM 6  custody 587 days, which is just over 19 1/2 months.  And we are

09:28:51AM 7  asking this Court for time served followed by three years of

09:28:54AM 8  supervised release in this case.

09:28:56AM 9          Your Honor, as far as the nature and circumstances of

09:29:00AM 10 this offense, as the Court saw in the presentence report, the

09:29:05AM 11 marketplace, if you will, which is the website that was on the

09:29:09AM 12 dark web, where Mr. Ivanov-Tolpintsev sold the servers that he

09:29:16AM 13 illegally acquired credentials to, operated from about

09:29:23AM 14 October of 2014 through January of 2019, when the government

09:29:27AM 15 shut that domain -- seized the domain and shut it down.

09:29:31AM 16         Of that little over five years, Mr. Ivanov-Tolpintsev

09:29:37AM 17 sold 6,704 servers on that website from a period of about two

09:29:43AM 18 years.  During the marketplace's existence, Your Honor, over

09:29:49AM 19 700,000 compromised servers were listed for sale.

09:29:54AM 20 Mr. Ivanov-Tolpintsev listed roughly less than 1 percent of

09:29:58AM 21 those servers, just to give the Court a scope of his

09:30:01AM 22 involvement in this marketplace, if you will.

09:30:05AM 23         While Mr. Ivanov-Tolpintsev characteristics and

09:30:11AM 24 history are not as remarkable as this Court usually sees with

09:30:15AM 25 some individuals, I'd ask the Court to consider the fact that

09:30:19AM  1   he doesn't have any criminal history prior to the commission of

09:30:21AM  2   this offense.  The Court, as far as the 3553(a) factors, has to

09:30:29AM  3   consider quite a few things, and I'll address a couple of them

09:30:32AM  4   with the Court:

09:30:33AM  5          The need for just punishment in this offense.  I

09:30:37AM  6   would argue to the Court that almost 20 months is a significant

09:30:42AM  7   punishment for an individual with no criminal history.  And

09:30:45AM  8   while I know that the intended loss is what the guidelines are

09:30:48AM  9   calculated on -- I'm not disputing that, based on the Court's

09:30:51AM 10   ruling -- the amount that Mr. Ivanov-Tolpintsev obtained from

09:30:55AM 11   this offense was diminutive compared to that.

09:30:59AM 12          While 82,000 -- just over $82,000, as stated in the

09:31:04AM 13   presentence report, is the amount that he was paid for those

09:31:07AM 14   servers, or received for those servers, he kept about half of

09:31:11AM 15   that.  And in the portion that he kept -- and he paid some of

09:31:17AM 16   that to maintain the software that he used to obtain the

09:31:20AM 17   illegal credentials.  As far as where the other portion of the

09:31:25AM 18   money that he did not receive went, it went back to the

09:31:28AM 19   administrators of this marketplace, right, because they're not

09:31:31AM 20   operating and allowing sellers to put stuff on this marketplace

09:31:36AM 21   for free, right?

09:31:39AM 22          The Court also has to consider -- or must consider

09:31:44AM 23   the need to avoid unwarranted sentencing disparities among

09:31:48AM 24   defendants with similar records found guilty of similar

09:31:52AM 25   conduct.  And the reason I address that with the Court is

09:31:55AM  1   because, unlike in some of these cases, in this case we have

09:31:58AM  2   the benefit of knowing who one of those administrators of the

09:32:01AM  3   marketplace was.  He has been brought to the United -- well, I

09:32:06AM  4   won't say brought to the United States.  I'll explain that in a

09:32:09AM  5   minute.

09:32:09AM  6           He was arrested in the United States, and he has

09:32:13AM  7   since been convicted and sentenced of two different crimes for

09:32:16AM  8   his involvement as an administrator in this marketplace.  He

09:32:21AM  9   was arrested after he came to a cryptocurrency seminar in

09:32:27AM  10  Miami.  He was unaware of the indictments that have been lodged

09:32:31AM  11  against him, and he got arrested, I think when entering the

09:32:34AM  12  country.  I know Mr. Gammons can correct that if I'm wrong.

09:32:38AM  13          He had a charge, Your Honor -- or an indictment in

09:32:42AM  14  New Jersey as well as an indictment here in the Middle District

09:32:49AM  15  of Florida.  The case from New Jersey was -- the jurisdiction

09:32:52AM  16  was transferred here to the Middle District of Florida, and he

09:32:55AM  17  was sentenced on both of those cases by a sister court here.

09:33:01AM  18  For his involvement as an administrator for the over five years

09:33:05AM  19  that this marketplace was in existence, for the two cases that

09:33:09AM  20  he resolved, he received a 30-month sentence.

09:33:13AM  21          And so while I know this Court must consider

09:33:16AM  22  individuals guilty of similar conduct, I would argue to this

09:33:20AM  23  Court that Mr. Ivanov's conduct is far less than that of

09:33:24AM  24  Mr. Kharmanskyi's.  He received a 30-month sentence --

09:33:29AM  25          THE COURT:  From whom?

|            |    |                                                          |
|------------|----|----------------------------------------------------------|
| 09:33:30AM | 1  | MS. BURDEN:  From Judge Barber, Your Honor. |
| 09:33:33AM | 2  | Your Honor, certainly Mr. Ivanov shouldn't receive |
| 09:33:36AM | 3  | more than that.  And I know, Your Honor, that the reason he |
| 09:33:41AM | 4  | received a reduction in that sentence was based on a 5K1.1 |
| 09:33:46AM | 5  | motion that the government filed. |
| 09:33:49AM | 6  | THE COURT:  What was his calculation? |
| 09:33:51AM | 7  | MS. BURDEN:  97 to 121 months was his guideline, |
| 09:33:54AM | 8  | Your Honor. |
| 09:33:54AM | 9  | THE COURT:  How much reduction did he get?  That's |
| 09:33:57AM | 10 | the -- |
| 09:33:57AM | 11 | MS. BURDEN:  He got an 11-level reduction. |
| 09:34:01AM | 12 | Now, while I understand, Your Honor -- I know that |
| 09:34:03AM | 13 | the system that we have here wouldn't operate without |
| 09:34:06AM | 14 | individuals who are able to provide information to the |
| 09:34:09AM | 15 | government to receive the benefit of that 5K1.1 motion, I'd ask |
| 09:34:15AM | 16 | this Court to consider what message we're sending as far as |
| 09:34:18AM | 17 | deterrence when an individual who is at the helm of this |
| 09:34:24AM | 18 | marketplace -- or one of the individuals.  He wasn't the sole |
| 09:34:26AM | 19 | individual -- but one of the individuals that was at the helm |
| 09:34:28AM | 20 | of this marketplace, and who, by the government's own admission |
| 09:34:34AM | 21 | in their recitation to the Court at his sentencing, was an |
| 09:34:42AM | 22 | individual heavily involved in the cybercriminal world in |
| 09:34:46AM | 23 | Ukraine, was an individual who had a ton of information to |
| 09:34:50AM | 24 | provide to the government. |
| 09:34:52AM | 25 | And so that individual can get that benefit and get |

| | |
|---|---|
| 09:34:55AM | 1 |
| 09:35:00AM | 2 |
| 09:35:03AM | 3 |
| 09:35:07AM | 4 |
| 09:35:10AM | 5 |
| 09:35:13AM | 6 |
| 09:35:17AM | 7 |

1  less time than an individual who has done far less than them in

2  this same conspiracy, if you will, I think creates a great

3  disparity for this Court.  And I would ask the Court to also

4  consider what message that sends the individuals in Ukraine

5  operating these sites that were -- if it were not for those

6  administrators, an individual like Mr. Ivanov-Tolpintsev

7  wouldn't have anywhere to sell these servers.

8           And so certainly, Your Honor, Mr. Ivanov-Tolpintsev

9  shouldn't receive more than a 30-month sentence for the two

10  cases that Mr. Kharmanskyi resolved.  Judge, based on those

11  reasons, as well as the others that I placed in my sentencing

12  memorandum, the almost 20 months that Mr. Ivanov-Tolpintsev has

13  served, we would argue that that's an appropriate sentence in

14  this case, followed by three years of supervised release.

15           Mr. Ivanov-Tolpintsev does want to address the Court,

16  but I would also ask the Court to allow the interpreter to read

17  a short letter that his family did mail, because they couldn't

18  be here, considering the circumstances going on in Ukraine,

19  Your Honor.

20           THE COURT:  Yes.

21           Yes, ma'am.

22           THE INTERPRETER:  So to the Middle District, U.S.

23  Court of Florida from the family of Mr. Glib Ivanov-Tolpintsev,

24  the letter -- a letter of support:

25           We're appealing you with the plea to please show

09:36:30AM 1  mercy and humaneness in making the ruling in the case of our

09:36:34AM 2  son and brother, Glib Ivanov-Tolpintsev.  We know Glib, from

09:36:40AM 3  his early childhood is a very kind, compassionate, and caring

09:36:43AM 4  person.  After his detention in the fall of 2020, the life of

09:36:48AM 5  our family has been divided into before and after Glib's

09:36:54AM 6  arrest.

09:36:54AM 7        In 2019, Glib's mother has survived a colon -- a

09:37:00AM 8  third Stage 3 colon cancer removal surgery.  For us, every day

09:37:05AM 9  of life without Glib is two days less of the life that is left

09:37:13AM 10  for her.  In the postsurgery period, Glib was actively helping.

09:37:19AM 11  He spent nights at her bedside, and he was giving her emotional

09:37:23AM 12  support.  Without his support, his mother would have been -- it

09:37:29AM 13  would have been unlikely that his mom would have been able to

09:37:33AM 14  weather six courses of chemotherapy.

09:37:38AM 15        A full-scale war has been ranging in Ukraine for over

09:37:43AM 16  two months.  There is no peace, and there is no certainty in

09:37:46AM 17  the next day.

09:37:47AM 18        For -- already for 19 months, we have been praying

09:37:51AM 19  for the health and the quickest return of Glib's -- Glib's

09:37:57AM 20  quick return back home.  Older grandmothers, parents, a sister,

09:38:04AM 21  and a fiancée are waiting for him.  We're always anxiously

09:38:09AM 22  looking forward to the -- his phone calls at any time in order

09:38:14AM 23  to just hear his voice.  He always tries to calm us down on the

09:38:21AM 24  phone, he always tells us that everything will be fine and that

09:38:24AM 25  we need to hope for the best.  And we trust him, and we have

09:38:28AM  1  this hope.

09:38:29AM  2          Three more additional months of uncertainty are just

09:38:36AM  3  impossible to bear, especially in the conditions of the war and

09:38:40AM  4  when we don't know what tomorrow will bring.

09:38:43AM  5          Glib is a very good and kind person.  He never

09:38:47AM  6  refused help to anyone.  He was always taking responsibility

09:38:50AM  7  for his actions, and he -- you -- one can feel reliability in

09:38:56AM  8  him, and one can always trust in him.

09:39:00AM  9          The -- Glib's detention, or his imprisonment,

09:39:09AM 10  directly impacts the health of his parents and his close

09:39:14AM 11  relatives.  We're sincerely asking you for your mercy in

09:39:18AM 12  relation to Glib.

09:39:20AM 13          Respectfully, Oleksandr and Velantyna Alina, the

09:39:26AM 14  family of Glib Ivanov-Tolpintsev.

09:39:27AM 15          THE COURT:  All right.  Thank you.

09:39:29AM 16          All right.  Mr. Ivanov-Tolpintsev, you do have an

09:39:31AM 17  opportunity to speak on your own behalf this morning.  You're

09:39:36AM 18  not required to say anything, but if you'd like to say

09:39:39AM 19  something, I'll hear from you now.

09:40:12AM 20          THE DEFENDANT:  I would like to say that I'm very

09:40:14AM 21  much ashamed for my actions, for what I did.  I would like to

09:40:17AM 22  go back to my family and not be a burden but a support to them.

09:40:27AM 23          I am pleading for forgiveness.  Yes, please.  I'm

09:40:38AM 24  sorry, it's very difficult.

09:40:57AM 25          I've contemplated a lot and thought a lot, and I will

09:41:01AM  1    never do anything like this in life again.

09:41:08AM  2                THE COURT:  All right.  Thank you, sir.

09:41:13AM  3                Anything further from the United States?

09:41:16AM  4                MR. GAMMONS:  Yes, Your Honor.

09:41:17AM  5                First, I'd like to address Pavlo Kharmanskyi, one of

09:41:23AM  6    the administrators from the website.  Mr. Kharmanskyi certainly

09:41:28AM  7    is more culpable than Mr. Ivanov-Tolpintsev.  However, in that

09:41:32AM  8    case he did receive the benefit of an 11-level motion pursuant

09:41:37AM  9    to 5K.  I will tell the Court, since I've been in the office,

09:41:45AM  10   that is the second highest 5K that I've ever requested of the

09:41:50AM  11   Court, and it certainly was deserved in that case.

09:41:53AM  12               I just want to talk a little bit about the

09:41:59AM  13   circumstances of Mr. Ivanov-Tolpintsev's case that I think

09:42:04AM  14   supports a 60-month sentence.

09:42:07AM  15               It's no secret that many cybercriminals reside in

09:42:13AM  16   Eastern Europe, but what may not be known to the Court is that

09:42:17AM  17   on many platforms, websites, forums, there is a rule, often

09:42:26AM  18   mandatory, that you cannot victimize individuals or persons in

09:42:31AM  19   the Commonwealth of Independent States, or CIS countries.

09:42:35AM  20               Specifically on the marketplace, you were not allowed

09:42:40AM  21   to victimize anybody from those countries, or you would be

09:42:44AM  22   banned immediately and indefinitely.  So ultimately the -- what

09:42:53AM  23   you have is individuals primarily from Eastern Europe

09:42:57AM  24   victimizing companies and individuals primarily in the West,

09:43:02AM  25   and more than 90 percent in the United States.

09:43:08AM  1          The countries in Eastern Europe where most of the
09:43:16AM  2   cybercriminals are, they don't share evidence with the United
09:43:18AM  3   States officially, which makes it extremely difficult to build
09:43:21AM  4   an investigation.  And those countries do not extradite from
09:43:27AM  5   the United States, which makes it extremely difficult to get a
09:43:30AM  6   person in custody, even if you have the resources to build the
09:43:33AM  7   investigation.
09:43:35AM  8          I'm inclined to agree that Mr. Ivanov-Tolpintsev will
09:43:41AM  9   not engage in this type of conduct going forward, but the
09:43:47AM 10   United States' concern is sending -- sending a message,
09:43:51AM 11   promoting respect for the law, and trying to discourage other
09:43:57AM 12   individuals who reside in these parts of the world from
09:43:59AM 13   victimizing U.S. citizens.  For those reasons, we think that a
09:44:08AM 14   sentence of five years is appropriate.
09:44:17AM 15          THE COURT:  So he got here how?  This defendant
09:44:20AM 16   arrived here how?  Because he went to Miami?  No, that was the
09:44:24AM 17   other fellow.  How did this fellow get here?
09:44:25AM 18          MR. GAMMONS:  The United States filed an INTERPOL Red
09:44:28AM 19   Notice to certain countries that are friendly to the United
09:44:30AM 20   States.  He passed into -- the indictment was under seal.  He
09:44:34AM 21   passed into Poland, which does extradite to the United States.
09:44:38AM 22          THE COURT:  You would think for $50 billion in
09:44:41AM 23   military aid, we could negotiate a halfway decent extradition
09:44:47AM 24   agreement and some assistance in law enforcement in Ukraine.
09:44:50AM 25          MR. GAMMONS:  You'd have some more defendants.

09:44:51AM  1      THE COURT:  I guess we didn't ask.  I have a feeling

09:44:56AM  2  the answer would have been, "Okay.  We'll do it."

09:45:03AM  3      So he was living in Ukraine?

09:45:09AM  4      MR. GAMMONS:  Yes, Your Honor, to my understanding.

09:45:15AM  5      THE COURT:  Chernivtsi, or somewhere.

09:45:21AM  6      All right.  Any reason not to proceed to sentence?

09:45:27AM  7      MR. GAMMONS:  No, Your Honor.

09:45:28AM  8      THE COURT:  Ms. Burden, anything further from the

09:45:30AM  9  defense?

09:45:30AM 10      MS. BURDEN:  No, Your Honor.  I'll rest on my

09:45:32AM 11  arguments as to why a 60-month sentence would be unreasonable

09:45:36AM 12  in light of the circumstances of this case, as well as in light

09:45:39AM 13  of the sentence that one of the administrators of this

09:45:42AM 14  marketplace, Mr. Kharmanskyi, received for the vast knowledge

09:45:47AM 15  that he had of the cybercriminal world in Ukraine.

09:45:50AM 16      THE COURT:  Well, that sentence would not be

09:45:52AM 17  comparable to this sentence unless you removed the 5K1 from it.

09:46:00AM 18  In other words, when you say that two sentences are disparate,

09:46:03AM 19  they have to be similarly situated sentences -- similarly

09:46:08AM 20  situated defendants.  Excuse me.  And someone with an actually

09:46:17AM 21  very elite-level 5K1 is not comparable to somebody with no 5K1

09:46:27AM 22  at all.

09:46:28AM 23      And second, on the disparity issue, while people tend

09:46:31AM 24  to think of a co-defendant or a co-conspirator or someone

09:46:35AM 25  associated with the same offense, actually that refers more to

09:46:41AM 1  the large body of similarly situated offenders, which is why

09:46:44AM 2  the sentencing commission makes available the aggregating data

09:46:51AM 3  by a classification, so that you can look and see what the

09:46:56AM 4  typical offender receives, because obviously some judge can

09:47:04AM 5  sentence in a nonstandard way, either rightly or wrongly, and

09:47:11AM 6  it's not the duty of every other judge to report to the level

09:47:14AM 7  assigned.  And I'm not suggesting that any sentence here was

09:47:17AM 8  erroneous; it sounds right to me.  But if some judge does give

09:47:21AM 9  an aberrant sentence, you don't have to report to that level,

09:47:25AM 10 because the larger body, again, looking to averages and means

09:47:29AM 11 and that sort of thing, you look to that to determine

09:47:35AM 12 disparity.

09:47:36AM 13     MS. BURDEN:  I agree, Your Honor, and I did -- as to

09:47:39AM 14 Your Honor's last comments.  And I referenced what the average

09:47:43AM 15 sentence in these type of offenses is, as reported as recently

09:47:46AM 16 as June 2021 from the sentencing commission, and that was in my

09:47:52AM 17 memorandum, Your Honor, which is 21 months.

09:47:55AM 18     THE COURT:  So then it becomes a question of finding

09:47:58AM 19 out not by the label of the offense but by the amounts involved

09:48:04AM 20 as to how comparable it is --

09:48:05AM 21     MS. BURDEN:  And I also --

09:48:06AM 22     THE COURT:   -- which is tricky business.

09:48:07AM 23     MS. BURDEN:  Oh, I'm sorry.  I thought Your Honor was

09:48:10AM 24 done.  I apologize.

09:48:11AM 25     And I do understand the Court's position, and I agree

09:48:14AM 1  that case law even states that a 5K1.1 motion makes

09:48:23AM 2  Mr. Kharmanskyi not comparable, if you will, to use the Court's

09:48:27AM 3  language, to Mr. Ivanov.  That being said, this Court can still

09:48:33AM 4  consider the disparity that creates as far as his level of --

09:48:38AM 5  "his" being Mr. Kharmanskyi's level of involvement in the

09:48:42AM 6  conspiracy that Mr. Ivanov-Tolpintsev is before this Court to

09:48:45AM 7  be sentenced on.

09:48:48AM 8           THE COURT:  Correct.  Well, according to the

09:48:49AM 9  guidelines, it looks like it was more or less twice as much,

09:48:53AM 10 that he was more or less going to get twice as much --

09:48:56AM 11          MS. BURDEN:  Correct.

09:48:57AM 12          THE COURT:  -- of a sentence, assuming guideline

09:48:58AM 13 sentences or something close thereto.

09:49:02AM 14          So let me just respond briefly to this issue.  You

09:49:08AM 15 know, Congress, when they passed the Sentencing Reform Act, and

09:49:13AM 16 the sentencing commission, when it implemented the guidelines,

09:49:15AM 17 made a fundamental choice, and it didn't have to make this

09:49:21AM 18 choice, but it -- the choice was between a sentence that would

09:49:26AM 19 reward cooperation that was useful to law enforcement, in other

09:49:33AM 20 words, dealmaking with people with most -- the most

09:49:39AM 21 information, which, as you suggest, often is the baddest guy in

09:49:45AM 22 the deal.

09:49:45AM 23          Congress didn't have to make a cooperative system

09:49:49AM 24 decision, but it did.  We haven't always had that in the United

09:49:53AM 25 States.  It was adopted.  And it has its pluses, because it

09:50:01AM 1   helps clean out the whole mess by, in effect -- and I'm not

09:50:09AM 2   suggesting that "paying a price" is the right phrase, but it's

09:50:12AM 3   what comes to me, that law enforcement pays a price to get the

09:50:16AM 4   information they want and accepts a lesser sentence for a more

09:50:20AM 5   culpable person, hoping, I think, that they will take advantage

09:50:24AM 6   of that opportunity.  They also are then big targets if they do

09:50:32AM 7   something again.

09:50:35AM 8          For example, I have sentenced members in organized

09:50:44AM 9   drug business from Colombia who had no supervisor -- they were

09:50:56AM 10  the top -- to both life and to release, depending on what they

09:51:03AM 11  accomplished, how long it was, how dangerous it was, how useful

09:51:08AM 12  it was to law enforcement.  Those sentences have varied all

09:51:13AM 13  over the place, yet, as you well know, pretty much every

09:51:18AM 14  crewmen on one of these vessels that comes in here gets

09:51:22AM 15  120 months or so.

09:51:24AM 16         So the sentences -- this is the cooperation system

09:51:30AM 17  that Congress elected and that this sentencing commission has

09:51:33AM 18  implemented.  It's the subject of fair debate, and the debate

09:51:40AM 19  has been had and resolved.  Sometimes it gives you pause, but

09:51:44AM 20  you have to look at it historically, and it's a decision not to

09:51:51AM 21  be overruled, I think, by either the sentencing commission or

09:51:56AM 22  the court, because you could run the system the other way, and

09:52:00AM 23  they chose not to.  So we take the good with the bad.

09:52:10AM 24         All right.  Mr. Ivanov-Tolpintsev, in fashioning a

09:52:40AM 25  sentence in the district court, I am required to consider a

09:52:44AM 1    number of things, each of which I have considered.  These

09:52:54AM 2    considerations include the policies and guidelines of the

09:53:00AM 3    sentencing commission, one of which acknowledges some leniency

09:53:10AM 4    for first offenders.

09:53:14AM 5            I have considered the statutory penalties.  I have

09:53:23AM 6    considered the advisory guideline range, which we have

09:53:31AM 7    discussed this morning earlier.  I've considered the

09:53:40AM 8    presentation of counsel, both written and oral, and I've

09:53:49AM 9    considered your statement on your own behalf.

09:54:06AM 10           I've also considered the factors at Section 3553(a).

09:54:15AM 11   I'll review those briefly.  The first is the nature of the

09:54:20AM 12   offense, characteristics of the offense.  The offense here was

09:54:32AM 13   a very aggressive offense, which utilized your special and

09:54:43AM 14   highly developed skills, definitely misapplied here, to defraud

09:54:59AM 15   the public.

09:55:04AM 16           You mentioned to me in your statement the troubles

09:55:15AM 17   and disturbances at your home, in your family, and in your

09:55:21AM 18   country.  I'll mention to you the enormous, almost

09:55:34AM 19   incomprehensible amount of fraud that is directed to the United

09:55:40AM 20   States of America, both by its own citizens, unfortunately and

09:55:48AM 21   disgracefully, by its allies, and by others around the world.

09:56:15AM 22   I think that there is scarcely a week that goes by that I don't

09:56:20AM 23   sentence a fraud scheme of some sort, often carried out by

09:56:28AM 24   someone like you, who's bright and capable and creative but

09:56:37AM 25   wants something for nothing at somebody else's expense.

09:56:47AM 1        So while you mentioned the troubles in your country
09:56:49AM 2   and in your family, you didn't mention the trouble that fraud
09:56:55AM 3   causes in individual families around the United States by the
09:57:00AM 4   hundreds and the thousands.  Some of them can stand it without
09:57:06AM 5   much pain; some of them can't.  Some of them are sick like your
09:57:24AM 6   mother.  Some are unemployed, have families to feed.  And with
09:57:37AM 7   operations like this, there's nothing they can trust.  They're
09:57:40AM 8   scared to use their credit card themselves, much less being
09:57:47AM 9   scared that someone else will use it for them.

09:57:53AM 10       So I see these cases week after week, month after
09:57:58AM 11  month, year after year, decade after decade, and everybody says
09:58:10AM 12  to themselves, Oh, I just got a little bit, or, I didn't really
09:58:16AM 13  cause all that much damage.  Well, if you didn't cause a lot of
09:58:23AM 14  damage, it was no credit to you, because you intended to and
09:58:33AM 15  you tried to and you profited pretty extensively in an effort
09:58:38AM 16  to do so.  And I imagine you were chuckling and not crying
09:58:48AM 17  along the way.

09:58:55AM 18       Second, there's your background to consider, the
09:59:09AM 19  characteristics of the offender.  I have a lot of people who
09:59:19AM 20  come in here who have suffered from poverty, from broken homes,
09:59:32AM 21  drug-addicted, imprisoned parents, criminal parents, criminal
09:59:40AM 22  siblings, been on the streets all their life, can't read very
09:59:49AM 23  well or write very well, have no real skill except theft or
10:00:01AM 24  drug dealing or the like.  So compared to them, you've had a
10:00:12AM 25  very good opportunity to do something other than what you did;

10:00:18AM 1   you had every opportunity in the world to do something else,

10:00:21AM 2   and you chose this.

10:00:24AM 3          You have a loving mother and father, I think a

10:00:29AM 4   successful sister, if I remember correctly.  It breaks my heart

10:00:50AM 5   to hear about the illness of your mother and to think that her

10:00:53AM 6   children are not there with her when she needs them.  And all

10:01:01AM 7   that I would say to that is that if you are busily committing

10:01:04AM 8   crimes in another country for your own benefit and putting your

10:01:09AM 9   liberty at stake by committing felonies, you cannot be at home

10:01:14AM 10  to help your mother and your father.

10:01:21AM 11         And referring to their plight -- or thinking about

10:01:24AM 12  their plight at a sentencing is a little bit late.  You should

10:01:29AM 13  have been thinking about them when you decided to do something

10:01:33AM 14  foolish and greedy.  It's perfectly clear that with the skills

10:01:54AM 15  you have, you could earn an honest and solid living.

10:02:01AM 16         I'm also to considerate other factors other than just

10:02:07AM 17  the offense and the offender.  I'm to consider respect for the

10:02:12AM 18  law, fashioning a sentence that enhances respect for the law,

10:02:18AM 19  which means many things, but I think it means, among them, that

10:02:24AM 20  the sentence should not be so great as to appear punitive to a

10:02:29AM 21  fair-minded and informed person or to appear unnecessarily

10:02:35AM 22  lenient to an informed and reasonable person.

10:02:42AM 23         I'm to consider protection for the community.  I

10:02:47AM 24  suppose I should say that in all capital letters, but I don't

10:02:51AM 25  think you can speak in capital letters.  But if I could, I

10:02:56AM 1 would, because I think that's very important here.  As I say,

10:02:59AM 2 these -- this variety of fraud crimes that come before the

10:03:08AM 3 courts in the United States and in the states of the United

10:03:14AM 4 States seem boundless in their volume and their variety.

10:03:30AM 5        And the United States and other countries have

10:03:36AM 6 enacted laws to attempt to discourage this because it

10:03:40AM 7 represents such a fundamental threat to the soundness of

10:03:49AM 8 communities in the United States.  And the United States and

10:04:02AM 9 the communities are clearly entitled to protect themselves and

10:04:06AM 10 to expect their enacted scheme of protection to be enforced by

10:04:10AM 11 the courts.

10:04:13AM 12        I'm also to consider deterrence.  That is a difficult

10:04:31AM 13 calculation, at best.  There are disagreements among informed

10:04:39AM 14 people about how effective deterrence is in particular sorts of

10:04:44AM 15 cases and among particular sorts of offenders, and it strikes

10:04:51AM 16 me that there's a large plus and a large minus here.

10:04:55AM 17        The plus is that with knowledgeable people such as

10:04:59AM 18 yourself, you become aware of the environment in which they are

10:05:05AM 19 operating and can calculate the risks involved, that there is a

10:05:14AM 20 better-than-typical opportunity for deterrence to have an

10:05:20AM 21 effect.  Perhaps the principal negative is that as Mr. Gammons

10:05:28AM 22 pointed out, a lot of the offenders in your category are not

10:05:35AM 23 nearby to gain knowledge of the penalty that has been

10:05:41AM 24 administered, although some of them are, a fair number of them

10:05:45AM 25 are.  So deterrence is always a somewhat ambiguous

10:05:54AM 1   consideration, but I have considered it to the extent that I

10:05:57AM 2   can.

10:05:59AM 3          I'm also to consider unwarranted disparity.

10:06:03AM 4   Actually, Ms. Burden and I have discussed that component

10:06:05AM 5   earlier.  And, again, there are some difficulties always in

10:06:12AM 6   being precise about that, but typically -- and there are some

10:06:21AM 7   exceptions to this -- a sentence within or near the guideline

10:06:28AM 8   range will typically not create disparity.  Now, there are some

10:06:33AM 9   well-known and well-demonstrated exceptions to that, but it's

10:06:42AM 10  generally the case.

10:06:43AM 11         There's no presumption that the guideline sentence is

10:06:50AM 12  reasonable, of course.  It is just one of the things to be

10:06:53AM 13  considered.  But in this instance, given the variability

10:07:00AM 14  demonstrated by your case of the intended loss amount

10:07:05AM 15  calculations, it's a little bit elusive to determine what the

10:07:09AM 16  precise comparison is.

10:07:11AM 17         Ms. Burden, is he subject to deportation?

10:09:04AM 18         MS. BURDEN:  He is, Your Honor.  He was paroled here

10:09:06AM 19  for the purpose of prosecution.

10:09:21AM 20         THE COURT:  All right.  Pursuant to the Sentencing

10:09:28AM 21  Reform Act of 1984, to the extent applicable after *United*

10:09:34AM 22  *States versus Booker*, and pursuant to 18 U.S.C. 3553, Glib

10:09:46AM 23  Oleksandr Ivanov-Tolpintsev is committed to the Bureau of

10:09:48AM 24  Prisons for 48 months.

10:09:53AM 25         Upon release, he'll serve a two-year term of

10:09:56AM 1  supervision, during which he must comply with the conditions

10:10:00AM 2  adopted in the Middle District of Florida, and as well the

10:10:06AM 3  special condition that if he is deported, he must not reenter

10:10:09AM 4  the United States without the express permission of the United

10:10:12AM 5  States Attorney General or the Attorney General's delegate.

10:10:55AM 6      Now, the defendant must cooperate in the collection

10:10:21AM 7  of his DNA as directed by the probation officer.

10:10:25AM 8      Has that been accomplished?

10:10:28AM 9      MS. CAMPBELL:  Not at this time, Your Honor.

10:10:33AM 10     THE COURT:  Okay.  I will direct you to accomplish

10:10:35AM 11 that as soon as possible.  Thank you.

10:10:37AM 12     I am always delighted to suspend the mandatory

10:10:45AM 13 drug testing requirements of the Violent Crime Control Act.

10:10:52AM 14 I'll waive the imposition of a fine.  There is a preliminary

10:10:57AM 15 order of forfeiture at Document 44, which is ordered final and

10:11:04AM 16 to be incorporated into the order of judgment and commitment.

10:11:08AM 17     I levy the special assessment of $100, which is due

10:11:16AM 18 immediately.

10:11:18AM 19     As I said, I've considered the factors that I have

10:11:22AM 20 discussed and conclude that this sentence is not greater than

10:11:28AM 21 necessary to accomplish the statutory purposes of sentencing.

10:11:33AM 22 I certainly considered the fact that the defendant is a first

10:11:39AM 23 offender, that he has no substance abuse history.   In

10:11:57AM 24 sentencing him slightly below the applicable guideline range, I

10:12:02AM 25 agree with the United States that he does not seem to be a

10:12:07AM  1  person likely to re-offend, so there is no predictable issue of

10:12:18AM  2  specific deterrence here.

10:12:25AM  3          And while he is relatively youthful, he's still

10:12:31AM  4  28 years old and responsible for his own conduct.  One can hope

10:12:40AM  5  that this sentence will redirect his considerable abilities to

10:12:48AM  6  other purposes in the future.  That would be a good result.

10:12:56AM  7          Counts 2, 3, and 4 of the indictment are dismissed.

10:13:01AM  8          Does counsel for the United States or the defense

10:13:04AM  9  object to the sentence or the manner of its announcement?

10:13:07AM 10          Mr. Gammons?

10:13:08AM 11          MR. GAMMONS:  There are no objections from the United

10:13:10AM 12  States.

10:13:10AM 13          THE COURT:  Ms. Burden?

10:13:11AM 14          MS. BURDEN:  No, Your Honor.

10:13:11AM 15          THE COURT:  The defendant is remanded to the United

10:13:14AM 16  States Marshals to await designation by the Bureau of Prisons.

10:13:16AM 17          Is there a recommendation with respect to his

10:13:19AM 18  housing?

10:13:19AM 19          MS. BURDEN:  The only thing I'd ask the Court is just

10:13:21AM 20  to recommend he be sent to a facility where he can work a

10:13:24AM 21  UNICOR job and learn English.

10:13:27AM 22          THE COURT:  All right.  I will recommend that he go

10:13:30AM 23  to a facility with UNICOR and that offers training in English

10:13:37AM 24  as a second language.

10:13:37AM 25          MS. BURDEN:  Okay.

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
| 10:13:40AM | 1  | THE COURT:  I was going to say, we don't have a |
| 10:13:42AM | 2  | facility in Mariupol -- |
| 10:13:44AM | 3  | MS. BURDEN:  No. |
| 10:13:45AM | 4  | THE COURT:  -- so we'll have to deal with one here. |
| 10:13:50AM | 5  | All right.  Mr. Ivanov-Tolpintsev, in your plea |
| 10:13:53AM | 6  | agreement, you have largely waived your right to appeal from |
| 10:13:58AM | 7  | this judgment and sentence unless I have sentenced you |
| 10:14:02AM | 8  | unlawfully.  Typically that means above the statutory maximum, |
| 10:14:11AM | 9  | above the applicable guideline range, or in some |
| 10:14:16AM | 10 | unconstitutional manner.  I think I have done none of those, so |
| 10:14:22AM | 11 | I think you have no right of appeal.  And that's for you and |
| 10:14:28AM | 12 | Ms. Burden to discuss. |
| 10:14:31AM | 13 | To the extent that you have a right to appeal and |
| 10:14:34AM | 14 | elect to do so, I need to tell you two things: |
| 10:14:40AM | 15 | Number one, you always have a right to counsel on |
| 10:14:43AM | 16 | direct appeal.  If you can't afford counsel, I would appoint |
| 10:14:48AM | 17 | one for you at public expense.  As it stands now, Ms. Burden |
| 10:14:54AM | 18 | and the Office of the Federal Defender must preserve and pursue |
| 10:15:01AM | 19 | any appeal unless other counsel is substituted for her by an |
| 10:15:06AM | 20 | order of the Court. |
| 10:15:09AM | 21 | Second, to begin an appeal, you must file with the |
| 10:15:14AM | 22 | clerk of this court a written notice of appeal that is filed |
| 10:15:20AM | 23 | within 14 days and that is accompanied by a filing fee.  If you |
| 10:15:25AM | 24 | haven't the money to pay the fee, Ms. Burden can ask the Court |
| 10:15:29AM | 25 | to waive the fee, and if that's granted, you can appeal without |

10:15:35AM  1  payment.

10:15:36AM  2          Anything further from the United States?

10:15:38AM  3          MR. GAMMONS:  No, Your Honor.

10:15:38AM  4          THE COURT:  From the defense?

10:15:40AM  5          MS. BURDEN:  No, Your Honor.

10:15:40AM  6          THE COURT:  All right.  We are in adjournment.

10:15:43AM  7          (Whereupon, the Court adjourned at 10:15 a.m.)

10:15:43AM  8                    --oo0oo--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

1

2      I, REBECCA M. SABO, a Registered Merit Reporter and

3 Certified Realtime Reporter, certify that the foregoing

4 transcript is a true and correct record of the proceedings

5 given at the time and place hereinbefore mentioned; that the

6 proceedings were reported by me in machine shorthand and

7 thereafter reduced to typewriting using computer-assisted

8 transcription; that after being reduced to typewriting, a

9 certified copy of the transcript will be filed electronically

10 with the Court.

11      I further certify that I am not attorney for, nor

12 employed by, nor related to any of the parties or attorneys to

13 this action, nor financially interested in this action.

14      IN WITNESS WHEREOF, I have set my hand at Tampa,

15 Florida, this 28th day of June, 2022.

16

17                       /s/ Rebecca M. Sabo

18                       Rebecca M. Sabo, RMR, CRR
                        United States Court Reporter

19

20

21

22

23

24

25